IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PAMELA WHITE,

    Plaintiff,

v.

                                      CIVIL ACTION NO.  2:21-cv-00444

NEWREZ, LLC d/b/a SHELLPOINT
MORTGAGE SERVICING

    Defendant

## MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff's Motion to Remand. [ECF No. 7]. Defendant has removed the case on the basis of diversity jurisdiction. Plaintiff, Ms. White, brought this action in the Circuit Court of Kanawha County, and Defendant, Shellpoint Mortgage Servicing Company ("Shellpoint"), timely removed. Ms. White timely moved to remand, and the issue is ripe for review.

Neither party disputes that diversity of citizenship exists; Ms. White is a resident of West Virginia, and Shellpoint is a Delaware limited liability company with its principal place of business in New York. The dispute lies with the amount in controversy. For the reasons that follow, I find that the amount in controversy is greater than $75,000 and that diversity jurisdiction exists. Plaintiff's Motion to Remand is **DENIED.**

I. **Background**

This action stems from alleged violations of the West Virginia Consumer Credit Protection Act ("WVCCPA") and alleged tortious interference with contract. Ms. White alleges the following facts in her complaint. She has owned her home, which has been in her family for over 100 years, since 1994. In 2004, she and her husband refinanced their mortgage to build an addition to the house. Their monthly payments were $581.27. In February 2020 Shellpoint took over servicing the mortgage. In October 2020 it increased Ms. White's monthly payment by almost $300 to $828.97 without warning or explanation. [ECF No. 1-1, at ¶¶ 6–9]. Ms. White, with her son's help, repeatedly contacted Shellpoint to question the increased payments. Eventually, they learned that Shellpoint had increased Ms. White's monthly payments because it had paid off delinquent Business and Occupation taxes to the City of Charleston that had accrued under the name of James A. White. This Mr. White is unrelated to Ms. White. The debts totaled $3,179.89. Shellpoint had also paid off an appraisal fee of $750 and monthly assessment fees of $13.50. In total, Shellpoint erroneously paid at least $3,943.39 to the City of Charleston and billed it to Ms. White's account. Ms. White provided Shellpoint with paperwork confirming that she had never owed the debt and asked them to make the proper adjustments. However, Shellpoint continued to demand the increased monthly payments and refused to remedy the situation.

Ms. White brought this action to cure that mistake. She seeks statutory penalties pursuant to the WVCCPA, punitive damages, and actual damages in the amount of the erroneously paid debt and actual damages for "stress, annoyance and inconvenience, harm to credit and ability to obtain credit, and fear of loss of home." [ECF No. 1-1, at ¶ 28].

Shellpoint has removed this case pursuant to 28 U.S.C. §§ 1332, 1441, arguing that the amount in controversy is more than $75,000. Shellpoint asserts that Ms. White's request for punitive damages and emotional damages could each, alone, satisfy the amount in controversy requirement. Even if those figures are insufficient, Shellpoint argues, the complaint alleges fifty-five statutory violations which each carry a $1000 statutory penalty, and Ms. White's claims, if successful, requires Shellpoint to pay her attorneys' fees, which could reasonably exceed $20,000. At the very least, Shellpoint claims, the combined demand for statutory fees, actual damages, punitive damages, and attorney's fees puts more than $75,000 in controversy.

Ms. White, on the other hand, argues that the amount in controversy is less than $75,000. She claims that Shellpoint overstates the number of alleged statutory violations, and that, even combined with the requests for attorneys' fees, punitive damages, and actual damages, the amount in controversy cannot reach $75,000. As evidence, she points to her complaint, which she argues alleges twenty-seven separate statutory violations—for a total of $27,000—and to her settlement demand

3

that Shellpoint void the loan balance, $54,577.45, and pay $8,500 in statutory attorneys' fees—for a total of $63,077.45.

## II. Discussion

Diversity jurisdiction exists when (1) the "matter in controversy exceeds the sum or value of $75,000," and (2) if controversy arises between "citizens of different States." 28 U.S.C. § 1332(a). Here, the parties agree that there is diversity of citizenship. Therefore, I will focus my analysis on the amount in controversy.

In general, the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). However, if the plaintiff contests the defendant's allegation, the defendant must establish the amount in controversy by the preponderance of the evidence. *Id.* at 88; *see* 28 U.S.C. § 1446(c)(2)(B). That is, the defendant must "show[ ] it is more likely than not that a fact finder might legally conclude that damages will exceed the jurisdictional amount." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (internal quotation marks omitted). "When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to show . . . what the stakes of litigation . . . are given the plaintiff's actual demands." *Id.* at 194. "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation." *Id.* at 196.

A. Settlement Demands

When the plaintiff has made a settlement demand, the court can use that demand as evidence of the amount in controversy. *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 964 (S.D. W. Va. 2011) (collecting cases). When the plaintiff's settlement demand exceeds $75,000, it "should be treated as the amount in controversy, unless the plaintiff shows that to a legal certainty he cannot recover over $75,000." *Id.* at 969.

Settlement demands that fall short of the jurisdictional amount, however, are different. *Mullins v. Harry's Mobile Homes, Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). Specifically, "[i]n order to allow for the hazards and costs of litigation, settlement offers routinely represent a discount from the damages plaintiffs will attempt to prove at trial." *Id.* In fact, the court in *Mullins* found that a settlement offer for $5,000 below the jurisdictional threshold was evidence that the amount in controversy exceeded the jurisdictional amount. *Id.* ("If these plaintiffs are willing to settle for $45,000 before trial, we can be assured that evidence of damages offered by them at trial will significantly exceed that sum.").

Here, Ms. White offered to settle this case for $63,077.45. Specifically, she demanded that Shellpoint void the loan balance, $54,577.45 and pay $8,500 in attorneys' fees. As the court in *Mullins* did, I consider this offer to be a "discount from the damages plaintiffs will attempt to prove at trial." I do not accept this settlement offer as definitive proof that the amount in controversy is less than $75,000. Instead, it is Ms. White's low-end estimate of the value of the available punitive and actual

5

damages.

### B. Statutory Penalties

The parties agree that the complaint alleges at least twenty-seven statutory violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), each of which carries a fine of $1,000. [ECF No. 8, at 11]. Defendant asserts that the complaint alleges at least fifty-five separate violations. [ECF No. 10, at 2–3]. Shellpoint and Ms. White agree that Counts IV, V, and VI allege eleven total statutory violations. They disagree on the number of violations alleged in Counts II and III.

The court need not decide how many violations are at issue. The parties agree that there are at least 27 violations, and therefore $27,000 in controversy. This amount combined with the Ms. White's other claims for punitive and compensatory damages, as estimated by her settlement demand, is sufficient to put more than $75,000 in controversy.

### III. Conclusion

Because the parties are diverse in citizenship and more than $75,000 is in controversy, the court has diversity jurisdiction in this case. Plaintiff's Motion to Remand is **DENIED.** The court DIRECTS the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

Enter: June 3, 2022

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE